## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SAUL RASMUSSEN,

      Plaintiff,

v.                                          CIV 03-1414 LAM

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on *Plaintiff's Motion to Reverse and Remand For Payment of Benefits, Or In The Alternative, For A Rehearing (Doc. 13)*. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion *(Doc. 13)* and the memorandum in support of the motion *(Doc. 14)*, Defendant's response to the motion *(Doc. 15)*, Plaintiff's reply to the response *(Doc. 16)* and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "Record" or "R"). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED IN THE ALTERNATIVE, FOR A REHEARING** and this case **REMANDED** to the Commissioner of Social Security (hereinafter "Commissioner") for further proceedings, consistent with this Memorandum Opinion and Order.

## I. Procedural History

Plaintiff, Saul Rasmussen, filed applications for Supplemental Security Income and Disability Insurance Benefits on August 14, 2001. *(R. at 110, 291)*. In connection with his applications, he alleged a disability since December 11, 1997, due to a "slipped disc, chronic back pain, [and] spinal vertabre [sic] opened in various locations." *(R. at 173)*. Plaintiff's applications were denied at the initial and reconsideration levels. *(R. at 68, 69, 79, 85)*. In his Reconsideration Disability Report, Plaintiff claimed a limited ability to walk, stand, sit, or lift due to back pain and added depression and sleeping problems due to his medical disabilities. *(R. at 188)*.

The Administrative Law Judge (hereinafter "ALJ") conducted a hearing on June 19, 2002. *(R. at 35-50)*. On November 29, 2002, the ALJ issued his decision in which he found Plaintiff not disabled at step four of the required sequential analysis as set forth in 20 C.F.R. § 404.1520. The ALJ found that Plaintiff had severe impairments including low back pain and a knee injury, but that these impairments did not meet or medically equal one of the listed impairments. *(R. at 77)*. The ALJ found Plaintiff retained the residual functional capacity (hereinafter "RFC") for medium work activity and that he could return to his past relevant work (hereinafter "PRW"). *(Id.)*. On January 21, 2003, Plaintiff requested a review of the hearing decision by the Appeals Council. *(R. at 93, 95-97)*. The Appeals Council remanded the case on February 28, 2003. *(R. at 98-101)*.

On June 30, 2003, a different ALJ conducted a second hearing. *(R. at 51-67)*. Plaintiff was represented at the hearing by an attorney. *(R. at 53)*. On August 5, 2003, the ALJ issued his decision in which he made the following findings, *inter alia*, with regard to Plaintiff pursuant to the sequential analysis set forth in 20 C.F.R. 404.1520: (1) claimant meets the requirements set forth in Section 216(i) of the Social Security Act and is insured for benefits through March 31, 2000;

(2) claimant has not engaged in substantial gainful activity since the alleged onset of disability; (3) claimant has an impairment or combination of impairments considered "severe"; (4) these medically determinable impairments do not meet or medically equal one of the listed impairments; (5) the claimant's allegations regarding his limitations are not totally credible; (6) all medical opinions in the record were carefully considered regarding the severity of claimant's impairments; (7) claimant has the residual functional capacity to perform a full range of medium work; (8) claimant's past relevant work as a security officer and worker do not require the performance of work-related activities precluded by his residual functional capacity; (9) claimant's medically determinable impairments do not prevent the claimant from performing his past relevant work; (10) claimant was not under a "disability" as defined in the Social Security Act at any time through the date of the decision. *(R. at 21-22)*.

After the ALJ issued his decision on August 5, 2003, Plaintiff filed a request for review. *(R. at 304)*. On November 4, 2003, the Appeals Council issued its decision denying the request for review *(R. at 8)*, making the ALJ's decision of August 5, 2003 the final decision of the Commissioner.

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). This Court's assessment is based on a "meticulous"

review of the entire record, where the Court can neither re-weigh the evidence nor substitute its judgment for that of the agency. *Hamlin*, 365 F.3d at 1214; *see also Langley*, 373 F.3d at 1118. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin*, 365 F.3d at 1214.

A claimant has the burden of proving his or her disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993); 42 U.S.C. § 423(d)(1)(A). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment; he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. §§ 404.1520 and 416.920. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity (hereinafter "RFC"), age, education, and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 446 (10th Cir. 1988).

### III.  Plaintiff's Age, Education, Work Experience and Medical History

At the time of the hearing, Plaintiff was forty-four years old *(R. at 55)* and, therefore, is defined as a "younger individual" within the regulations.  20 C.F.R. § 404.1563.  He has a limited education, finishing only the eleventh grade of high school and failing to pass the GED.  *(R. at 39, 55-56)*.  During the fifteen year period prior to the ALJ's decision, Plaintiff worked in home repair/remodeling and as a hotel and airport security officer.  *(R. at 136, 148, 174)*.

Plaintiff's medical records are sparse and consist of emergency room reports and consultative exams arranged by the Social Security Administration office.  *(R. at 206, 207, 213, 217, 224, 226-233, 242-249, 264-278, 279-282)*.  On March 2, 1998, Plaintiff went to a hospital emergency room complaining of back pain as a result of a bus accident on February 25, 1998.  *(R. at 224)*.  Plaintiff was released following a negative x-ray, with instructions to see a physician if his problem worsened. *(Id.)*  On March 23, 1998, Plaintiff again visited an emergency care center complaining of back pain and sciatica pain on his right side.  *(R. at 215)*.  Plaintiff was discharged with medications for pain and spasms and with instructions to phone an orthopedic physician for evaluation.  *(Id.)*  Plaintiff indicated he had been referred to the emergency care center by his attorney.  *(R. at 213)*.

Plaintiff went to the emergency care center twice in August, 1999 complaining of a soft tissue mass on his back.  *(R. at 206-211)*.  The mass was diagnosed as a diffuse lipoma over the midline cervical area that could be excised under local anesthesia and Plaintiff was to decide if he wanted it removed.  *(R. at 206)*.  Medical records indicate that Plaintiff next visited an emergency room on October 25, 2000 complaining of soreness and swelling in his right shoulder.  *(R. at 218)*.  The clinical impression was of tendinitis of the right shoulder. *(R. at 221)*.  Plaintiff was given an ice pack,

pain medication and instructions to consult a physician if the soreness and swelling persisted.  *(Id.)*

On January 12, 2001, Eugene Toner, M.D. conducted a consultative physical exam of Plaintiff.  *(R. at 226-233)*.  Dr. Toner's assessment indicated complaints of back pain with no evidence of radiculopathy[1] and mild degenerative disc disease at L4-5 and L5-S1.  *(R. at 227)*. Dr. Toner concluded that

> [t]his claimant's complaints are in excess of his objective findings.  He has some degenerative disc disease that may be in excess, although it may be normal for his age. I do feel that he should be able to lift 40 pounds on an occasional basis and 20 pounds frequently.  I would not restrict his walking, standing, sitting or use of his upper extremities.
>
> This claimant is under no medical treatment for his back pain.  He has no evidence of any radiculopathy either by complaints or on examination.  I do feel with appropriate physical conditioning and proper lifting techniques that he should be able to tolerate moderate work.

*(R. at 227-228)*.

On November 7, 2001, Plaintiff again visited Dr. Toner for a second consultative physical examination.  *(R. at 242-249)*.  The results of this examination indicated that Dr. Toner found "nothing here that will indicate this claimant should be unable to do things that will be considered normal for his age, size, and sex."  *(R. at 243)*.  In the Medical Source Statement of Ability to do Work-Related Activities, Dr. Toner placed no limits on Plaintiff's physical abilities.  *(R. at 248-249)*. On June 10, 2002, Plaintiff visited an emergency room complaining of left knee pain.  *(R. at 271)*. X-rays were inconclusive, but the diagnosis was a knee sprain with a possible medial meniscus tear

---

[1]Radiculopathy is a disorder of the spinal nerve roots.  *Stedman's Medical Dictionary* 1503 (27th ed., Lippincott Williams & Wilkins 2000).

and Plaintiff was given pain medication, a knee immobilizer and crutches and instructed to follow up with a physician. *(Id.)*

On August 24, 2002, J. Annette Brooks, Ph.D. conducted a consultative psychological examination of Plaintiff. *(R. at 279-282)*. Dr. Brooks conducted a clinical interview with a Mental Status Exam and administered the Wechsler-Adult Intelligence Scale, 3rd edition (WAIS-3). *(R. at 279)*. Plaintiff was found to be functioning intellectually in the borderline range and Dr. Brooks noted a significant difference between his verbal and nonverbal IQs, but found the test results consistent with Plaintiff's presentation and educational background. *(Id.)* Dr. Brooks' diagnosis was "major depressive disorder" (recurrent, mild), "antisocial personality disorder" (of primary concern) with "borderline intellectual functioning." *(R. at 282)*. Dr. Brooks noted that Plaintiff exhibited a "lifestyle significant for lack of responsibility and accountability, [including] conflict with [his] primary support group, [and] chronic pain." *(Id.)* Plaintiff's Global Assessment of Functioning Score (hereinafter "GAF") was 56. *(Id.)* Dr. Brooks included the observations that while Plaintiff's "presentation and deficits certainly limit his vocational opportunities, [they] do not render him disabled," and that Plaintiff "was uninvested in maintaining employment, and he expressed a distinct lack of interest in vocational training and/or psychiatric interventions." *(Id.)*

## IV.  Discussion/Analysis

The ALJ denied Plaintiff benefits at step four of the five-part sequential analysis for determining disability.  In step four, the ALJ's duty is one of inquiry and factual development. *Henrie v. United States Dep't of Health & Human Services*, 13 F.3d 356, 361 (10th Cir. 1993) *quoting Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987).  It is not the ALJ's duty to be claimant's advocate; instead, claimant continues to bear the burden of showing that his impairment renders him

unable to perform his past relevant work. *Andrade v. Sec'y. of Health & Human Services*, 985 F.2d 1045, 1050 (10th Cir. 1993).

Plaintiff alleges the ALJ made two errors in denying his claim for benefits.  Specifically, Plaintiff argues that the ALJ's analysis and finding that Plaintiff's impairments do not meet a listing at step three is contrary to law; and that the ALJ's analysis of Plaintiff's past relevant work is contrary to the evidence and the law.  *(Doc. 14 at 4).*

Defendant argues that the ALJ applied the correct legal standards and his decision that Plaintiff was not disabled is supported by substantial evidence.

## A. Step Three Analysis

Plaintiff has the burden of proving that his condition meets or equals a Listing of Impairments for the purposes of step three analysis. *Sullivan v. Zebley*, 493 U.S. 110 S.Ct. 885, 891-92 (1990). In order to satisfy his burden, Plaintiff must demonstrate that his impairment meets or equals all of the specified medical criteria for the listing in question.  If the impairment meets only some of the criteria, regardless of severity, a listing will not be met. *Id.*, 110 S.Ct. at 891.

At step three, the ALJ must determine whether the "medical findings" at least equal in severity and duration those criteria set forth in a listing.  *Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988).  "'Medical findings' include symptoms (Plaintiff's own description of his impairments), signs (observations of anatomical, physiological and psychological abnormalities which are shown by clinical diagnostic techniques) and laboratory findings."  *Id. citing* 20 C.F.R. §§ 404.1526(a), 404.1528(a).  Plaintiff's descriptions, alone, are insufficient to establish criteria of a listing. *Id.*  The step three analysis requires a comparison of those medical findings and evidence with the listing criteria.

At issue in this case are the criteria for the Listing 12.05(C) Mental Retardation.  There is a two-prong test ((1) a valid verbal, performance, or full scale IQ score of 60 through 70; and (2) an additional significant mental or physical impairment affecting work functions) plus additional elements imposed by the diagnostic description (capsule definition) in the introductory paragraph of § 12.05. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05; *Barnes v. Barnhart*, 2004 WL 2681465 at *1 (10th Cir. (Okla.)) (unpublished).  These additional elements include proof of deficit functioning and proof that the impairment onset was prior to the age of 22.  *Id.*

In this case, the ALJ considered whether Plaintiff met the criteria for the Listing 12.05(C) Mental Retardation *(R. at 19)*, as alleged by Plaintiff's attorney in a letter submitted following the hearing and again in the request for review to the Appeals Council.  *(R. at 201, 304-306)*.  First, Plaintiff argues that he meets the criteria for the Listing of 12.05(C) because Dr. Brooks' report listed Plaintiff's IQ as ranging from 70 to 84 and thus, the lowest score falls within the required range.[2]  The ALJ concedes Plaintiff's IQ score falls within the required range of § 12.05(C).

Next, Plaintiff alleges that his depression, which he claims is an additional, severe mental limitation, meets the second prong of § 12.05(C).  Plaintiff argues that because, at step two, the ALJ found Plaintiff's medically determinable impairments (major depressive disorder, antisocial personality disorder with borderline intellectual functioning, and mild degenerative disc disease) "severe" in combination but failing to meet a listing, these impairments should automatically fulfill the second prong of § 12.05(C).  The ALJ specifically addressed and rejected Plaintiff's assertion that he met the second prong of § 12.05(C), finding that Plaintiff's "additional mental impairments do not impose

_____

[2]Dr. Brooks' evaluation of Plaintiff included WAIS-3 IQ scores as follows:  Full Scale IQ 76 (borderline), Verbal IQ 84 (low average), and Performance IQ 70 (borderline).  *(R. at 281)*.

additional and significant limitations of function." *(R. at 19)*. The Court must agree with Plaintiff's argument, on this point, based on the Tenth Circuit's recent ruling in *Barnes*, "that where an ALJ determines at step two that a claimant's impairment is severe, that impairment is a 'significant' limitation of work functions within the meaning of Listing 12.05(C)." *Barnes v. Barnhart*, 2004 WL 2681465 at *1 (10th Cir. (Okla.)) (unpublished) *quoting Hinkle v. Apfel*, 132 F.3d 1349, 1352-53 (10th Cir. 1997).

However, the Court finds the ALJ's error to be harmless because Plaintiff still fails to meet all the necessary criteria of § 12.05(C). Plaintiff offered no proof of the additional elements imposed by the diagnostic description (capsule definition) in the introductory paragraph of § 12.05 - that "significantly subaverage general intellectual functioning with *deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22*." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added); see *Barnes*, 2004 WL 2681465 at *4 (It is "clear that the capsule definition imposes additional elements to the claimant's burden under Listing 12.05(C) and (D)."); *see also Blackwell v. Barnhart*, 258 F. Supp. 2d 851, 863-64 (N.D.Ill. 2003) (Claimant must satisfy all of the criteria, including the requirement that the impairment onset was prior to age 22). Plaintiff stated both during the hearing and in his applications that he was in "special education" classes but offered no evidence of deficits in adaptive functioning nor evidence of his participation in special education programs before he turned 22. *(R. at 56, 64, 141)*.

It appears that Plaintiff erred in reaching the conclusion that he fit the listing of § 12.05(C) Mental Retardation. The diagnoses of Dr. Brooks, following a clinical interview and intelligence testing, does not include mental retardation. *(R. at 279-282)*. According to the Diagnostic and

Statistical Manual of Mental Disorders (hereinafter "DSM-IV-TR"), an essential feature of mental retardation is a significantly subaverage general intellectual functioning, which is defined by an intelligence quotient (IQ) obtained by assessment of standardized tests. *(DSM-IV-TR at 41)*. However, due to measurement errors in assessing IQ, clinicians look for impairments in adaptive functioning rather than just a low IQ in diagnosing mental retardation. *Id. at 42*. Therefore, "Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning." *Id*. Dr. Brooks specifically noted that Plaintiff had "a long-standing personality style which interferes with functioning [and] . . . deficits [that] certainly limit his vocational opportunities, but do not render him disabled." *(R. at 282)*. In spite of the above noted deficits, Dr. Brooks diagnosed Plaintiff as having an antisocial personality disorder with borderline intellectual functioning, **not** as having mental retardation. *(Id.)*

Plaintiff alleges his GAF score of 56 indicates an impairment that will affect his ability to work. *(Doc. 14 at 6)*. A GAF score is a measurement of the clinician's judgment of an individual's psychological, social and occupational functioning. *(DSM-IV-TR at 32)*. A GAF score within the range of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *(Id. at 34)*. However, the Tenth Circuit has held that a GAF score of 50, "without evidence that it impaired [plaintiff's] ability to work, does not establish an impairment." *Camp v. Barnhart*, 103 Fed Appx. 352, 2004 WL 1465777, *1 (10th Cir. 2004) (unpublished opinion). Dr. Brooks' assessment of Plaintiff did not state that Plaintiff's GAF score would impair his ability to work. *(R. at 282)*.

The Court finds that the Plaintiff failed to carry the burden of proof that his condition met all the criteria for a step three listing and that remanding due to the ALJ's error would be pointless.

## B. Past Relevant Work Analysis

At step four, the relevant analysis is whether Plaintiff is able to return to his past relevant work. This analysis includes three phases. First, the ALJ must evaluate Plaintiff's physical and mental residual functional capacity. *See e.g. Winfrey v. Chater*, 92 F.ed 1017, 1023 (10th Cir. 1996). Second, the ALJ must determine the physical and mental demands of Plaintiff's past relevant work. *Id.*; 20 C.F.R. § 404.1520(e). Finally, the ALJ must determine whether Plaintiff has the ability to meet the job demands found in the second phase despite the mental and/or physical limitations found in phase one. *Winfrey*, 92 F.3d at 1023 *quoting Henrie v. United States Dep't of Health & Human Services,* 13 F.3d 359, 361 (10th Cir. 1993).

In this case, the ALJ noted, based on the evaluations of the state agency physicians *(R. at 234-241, 250-257)* and the consultative physical examinations performed by Dr. Toner *(R. at 227-228, 232-233, 243, 248)*, that Plaintiff had no restrictions for walking, standing, sitting, or use of his upper extremities and maintained the functional capacity to perform a full range of medium work. *(R. at 20, 22)*. The ALJ noted, based on the psychological evaluation conducted by Dr. Brooks *(R. at 279-282)*, that Plaintiff presented no underlying psychotic disorder although his presentation and deficits did limit his vocational opportunities. *(R. at 20)*. The ALJ found it significant that Plaintiff failed to seek any treatment for his mental impairment, had not been prescribed any anti-depressant or psychotropic medication and noted that "no doctor has indicated that the claimant is disabled because of a mental impairment and there are no documents that indicate that the claimant suffers with any type of psychological or psychiatric debilitating impairment." *(R. at 21)*. The ALJ specifically states that "[a]ll examining sources appear to *indicate no significant physical disability or mental disability*

*either.*"  *(R. at 20) (emphasis added).*  The ALJ concluded that Plaintiff "is mentally capable of unskilled and some semi-skilled work based on his significant work history." *(Id.).*

To determine the demands of Plaintiff's past relevant work, the ALJ asked Plaintiff during the hearing on June 30, 2003, to describe his past work as a construction laborer and as an airport security officer. *(R. at 57, 62).*  Plaintiff described the airport security position as "checking people's luggage from incoming flights and . . . tagging them and making sure that people get their proper luggage." *(R. at 62).*  Plaintiff included detailed descriptions, including the specific physical demands of walking, standing, climbing. stooping, kneeling, crouching, handling, writing, lifting and carrying, of his past work as a motel security officer and as an airport security officer on his Work History Report.  *(R. at 153, 154).*  From these descriptions and hearing testimony, the ALJ had sufficient evidence to assess the demands of Plaintiff's past relevant work.  From this information, and the record as a whole, the ALJ concluded that Plaintiff "retained the residual functional capacity to perform a full range of medium work at the unskilled to lower semi-skilled levels." *(R. at 21).*  Based on Plaintiff's RFC, the ALJ found that Plaintiff could return to his past relevant work as a security officer.  *(R. at 21, 22).*

Plaintiff also claims that his work as a security officer is too remote in time to be considered past relevant work. *(Doc. 14 at 8).*  To be considered past relevant work, the work must have been performed within the past 15 years.  *See* 20 C.F.R. §§ 404.1565(a); 416.965(a).  The Court finds Plaintiff's claim to be unfounded as Plaintiff indicated in his Work History Reports that he worked as an airport security officer from May, 1990 to October, 1995, well within the 15 year time limit. *(R. at 136, 148).*

13

Finally, Plaintiff alleges that the ALJ erred by failing to call a vocational expert to determine if Plaintiff would be required to "use machines or devices with which he is not familiar." *(Doc. 14 at 8)*. The ALJ did not use a vocational expert and is not required to do so if the claimant can return to his past relevant work as determined at step four. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Glenn v. Shalala,* 21 F.3d 983, 988 (10th Cir. 1994). The use of a vocational expert is usually within the discretion of the ALJ (20 C.F.R. § 404.1566(e)); however the Appeals Council, upon remand, specifically stated, *inter alia*, that the ALJ will "[o]btain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." *(R. at 100)*. The regulations mandate that an ALJ "**shall** take any action that is ordered by the Appeals Council." 20 C.F.R. § 404.977(b) (emphasis added). Also, some courts have held that a failure to abide by the terms of an Appeals Council remand order as required by 20 C.F.R. § 404.977(b) is erroneous as a matter of law and requires remand back to the ALJ. *See Hutchison v. Apfel,* 2001 WL 336986 at *11 (N.D. Tex. 2001) ("At the very minimum, this case should be remanded to defendant Commissioner . . . for development of the issues as had been previously ordered by the Appeals Council."); *Mann v. Chater,* 1997 WL 363592 at *3 (S.D.N.Y. 1997) ("The ALJ should have followed the order of the Appeals Council. . . . Because he did not, I must remand this action."). The Court finds that the ALJ's failure to obtain evidence from a vocational expert to clarify the effect of Plaintiff's functional limitations, as ordered by the Appeals Council, is an error that requires remand.

## V. Conclusion

In accordance with the standard of limited review, the Court finds most of Plaintiff's arguments, as presented, unpersuasive but because the ALJ failed to obtain additional evidence from

14

a vocational expert clarifying Plaintiff's functional limitations, as ordered by the Appeals Council, this case must be remanded to the Commissioner for further proceedings, in accordance with this Memorandum Opinion and Order.

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, Or In The Alternative, For A Rehearing *(Doc. 13)* is **GRANTED IN THE ALTERNATIVE, FOR A REHEARING** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*Lourdes a. Martinez*

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**